## CALLIHAN v. COLORADO NAT. BANK.
### No. 1285.

Court of Civil Appeals of Texas. Eastland.
June 15, 1934.

Rehearing Denied July 13, 1934.

**286**

See, also (Tex. Civ. App.) 58 S.W.(2d) 143.

F. L. Kuykendall, of Austin, for appellant.

R. H. Ratliff and Thos. R. Smith, both of Colorado, Tex., for appellee.

LESLIE, Justice.

On August 4, 1931, George Callihan recovered in the county court of Shackelford county a judgment against R. L. Lunceford for $386.12, with interest thereon from date at the rate of 6 per cent. per annum. With this suit as a basis, Callihan sued out a writ of garnishment, and the same was served on the Colorado National Bank of Mitchell County, Tex., on April 27, 1931. May 4th, thereafter, the garnishee answered admitting an indebtedness to Lunceford of $170.79. Callihan contested the answer alleging that after the writ was served there came into the possession of the bank $750 belonging to said Lunceford and that in law the same was impounded by the writ.

█ The check for $750, by Geo. Goodrum, payable to said Lunceford, came into the possession of the bank April 8, 1931, and the funds derived from the collection of the check came into the bank May 2, 1931. The bank undertook to justify the payment of $549.01 out of said amount, on the ground that it held same under a special agreement with Goodrum which it was obliged to observe and which was evidenced by a contract and letter, each of which was received April 8, and which were introduced in evidence. The letter dated April 3d is as follows:

"I am herewith enclosing a drilling contract in duplicate, which please have Mr. R. L. Lunceford sign both copies and return the original to me; you to keep the duplicate in escrow until the well is completed.

"Also, enclosed is my check for $750.00 to be held in escrow in accordance with the terms of the contract and released only when all labor bills have been paid and when authorized by me after the contract has been fulfilled.

"I am also enclosing my check, made payable to R. L. Lunceford, for $75.00, which please release to him upon his signing said drilling contract in duplicate.

"Will you please acknowledge receipt of the contract and checks and also advise me when contract is signed.

"I will be in Colorado before completion of the well, at which time I will be in to make your acquaintance.

"Thanking you in advance for your usual prompt attention, I am

"Very truly yours,
[Signed]   Geo. Goodrum."

The contract to which the letter referred, and which was inclosed with it when mailed to the bank, contained, among other provisions, the following: "It is further understood and agreed that the contract price for the drilling of said 750 feet, shall be $850 to be paid as follows: $100 to be paid contractor in cash upon the signing of this agreement, and the balance of $750 to be put in escrow in The Colorado National Bank, Colorado, Texas, to be paid to contractor upon the satisfactory completion of said well. The said contractor to furnish all machinery, labor, fuel, water, casing, and all other equipment necessary to complete said well in a good workmanlike manner, in what is known as a turnkey job."

The contract was signed in duplicate by Lunceford, to whom was delivered the $75 check inclosed in the letter. This letter and the contract taken together evidenced the original terms upon which the funds collected by virtue of the check were placed with the garnishee bank. They definitely fixed the original status of the fund in the bank. The creation of a condition precedent to the acquisition by Lunceford of any interest in the $750 could hardly be expressed in clearer language. Goodrum had the right to attach any conditions to the check or the funds derived therefrom deemed expedient or necessary for his own protection. The performance or waiver of these conditions thereafter became necessary before Lunceford's rights attached to any part of the funds. Said condition, as stated in the contract, was the "satisfactory completion of said well" by Lunceford after furnishing all machinery, labor, fuel, etc., and all equipment necessary for that purpose. The bank was instructed to keep a copy of the contract "in escrow until the well is completed." The letter further instructed it to hold the $750 check in escrow in accordance with the terms of the contract, and that it be "released only when all labor bills have been

paid and when authorized by me (Goodrum) after the contract has been fulfilled." Acting upon the stipulations of the contract and the suggestions in the letter, Lunceford, at the instance of the bank, not only executed the contract, but accepted the $75 check mentioned in the letter. In doing this he recognized the impediment set up between him and any immediate right in him to the $750.

The contract and accompanying letter must be construed together in arriving at the instructions to the bank as the escrow depositary in the instant case, and until the performance of the above condition, no rights in Lunceford attached to any part of the $750 obligation, whether viewed as a check, or as a fund derived from the collection thereof.

■ As said in Medley v. American Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86, 89: "In order for a fund or liability to be subject to garnishment there must be no condition precedent, no impediment of any sort between the garnishee's liability and the defendant's right to be paid."

See, also, Mayfield Co. v. First National Bank (Tex. Civ. App.) 287 S. W. 510; McClellan v. Routh, 15 Tex. Civ. App. 344, 39 S. W. 607.

■■ The question arises when, if ever, did Lunceford become entitled to any part of the fund derived from the collection of the check? The only evidence on this point is a letter from Goodrum to the bank dated April 25, 1931, as follows:

"Please release Goodrum-Lunceford escrow money to Lunceford in the amount of $750.00, less $25.00 paid by myself for hauling pipe from Sweetwater. It will be necessary to get labor releases from R. L. Murphy, Donald Murphy, L. L. Dorn and Mr. Banks. Also have Lunceford make a signed statement that well is properly plugged.

"Geo. Goodrum."

In view of the judgment, and the trial court's conclusions generally, does this letter conclusively show, as a matter of law, that the garnishee bank, which clearly was not indebted to Lunceford when the writ was served, became indebted to him in any amount subsequently thereto? We think not. Yet, the burden of proof in this respect was on the plaintiff Callihan to establish such indebtedness, and the amount. Belva Oil Co. v. Lowe (Tex. Civ. App.) 27 S.W.(2d) 599. The trial court found that this burden was not discharged.

This letter is believed to be in harmony and consistent with the terms of the original contract, and the letter of April 8th. It is in part explanatory thereof. It does not release the $750 before "all labor bills have been paid." Apparently, it had become necessary to get "labor releases" from four of the laborers when they were paid, but it was still a necessary and essential part of the original condition that all laborers, etc., be paid before Lunceford's right attached to the funds, and became subject to garnishment. If it be conceded that the letter of April 25th is not entirely clear, there is nothing uncertain about it in this respect: Goodrum did not acknowledge that Lunceford had any unconditional right to the $750, or any part thereof. The letter denied him any right whatever in the $25 mentioned therein. As above pointed out, it was for the plaintiff to show that not only all conditions had been performed, or waived, that prevented the attachment of Lunceford's right, but also the amount of such indebtedness to Lunceford, upon the discharge of such condition. There is no evidence that releases had been procured from the parties named; that Lunceford made the signed statement requested by the letter that the well had been properly plugged; or that the labor bills had been paid as specified in the original letter of April 8th to the bank. In fact, the letter of April 25th does not conclusively show, if indeed it is any evidence whatever of the fact, that the original conditions had been waived.

Considering the manner in which the bank handled the entire transaction, the true interpretation thereof is that the bank never credited Lunceford with more than the $170.-79, which was acknowledged to be due him. Simultaneously with the bank's book entry of $750 were made the charges of the amounts aggregating $549.01, and the evidence shows that this clearly would not have been entered without the debits. If these debits were not merely the means or method of carrying out the original condition upon which the fund was placed with the bank, the evidence certainly does not so show, and the burden of making that proof was on the plaintiff. These seven Lunceford checks were all in the possession of the bank, May 2d, and at the time the money on the $750 check came into the possession of the bank and became available for the purposes for which it had been placed with the bank. Further, we cannot say from this record that there is no evidence to support the conclusions of the trial court that those sums were paid on obligations for labor, material, etc., which the contract and letter required Lunceford to furnish in the drilling of the well.

The record presents no question of an assignment of any part of the fund, and there

is no evidence that the bank accepted or certified any check involved. Article 5947, § 189, R. S. 1925; Koenig v. Rio Bravo Oil Co. (Tex. Com. App.) 24 S.W.(2d) 14; Central National Bank v. Latham & Co. (Tex. Civ. App.) 22 S. W.(2d) 765.

Other assignments in the record relating to the admission of the testimony are overruled.

Upon this record we are of the opinion that the bank answered correctly, and that the judgment of the trial court should be affirmed. It is so ordered.

HICKMAN, Chief Justice (dissenting).

I find myself unable to agree with my associates either as to the proper construction to be given to the written instruments, or as to the conclusions of fact to be drawn from the record. My dissent from the holding of the majority is, therefore, respectfully noted.