**HILLSDALE GRAVEL CO. v. DENNEHY CONST. CO. et al.**

No. 2493.

Court of Civil Appeals of Texas. Eastland.

Jan. 19, 1945.

Rehearing Denied Feb. 16, 1945.

584

Harry R. Bondies, of Sweetwater, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, S. M. Leftwich, of Dallas, and Leslie Neill, of Tyler, for appellee.

LESLIE, Chief Justice.

This is a garnishment proceeding ancillary to a suit on debt by the Hillsdale Gravel Company, hereinafter called Hillsdale, against the Cement Products Company, Inc. Before this suit went to trial, the suit on debt was reduced to judgment in favor of plaintiff Hillsdale against the Cement Products Company for $1,539.-25, interest, costs, etc.

The garnishee, Dennehy Construction Company, hereinafter called Dennehy, answered admitting an indebtedness of $4,-063.82 to the Cement Products Company, which it paid into the court.

Dennehy Construction Company also alleged that Hillsdale was claiming rights under public improvement statutes, Arts. 5160 et seq. and 5472a et seq., Vernon's Ann.Civ.St. With respect to its contract with the Cement Products Company, by virtue of which it was indebted to that company, Dennehy alleged that Cement Products Company was to furnish cement blocks for use by it in the construction of public improvements for the Lubbock Housing Authority at Lubbock, Texas.

For such reasons it alleged that Cement Products Company was a materialman and not a sub-contractor, that such statutes had no application to the facts of this case, and prayed that Hillsdale's rights, if any, under said Statutes be adjudicated. It further alleged that if unsuccessful in its garnishment, Hillsdale would later assert rights under those statutes in other suits, and prayed, to avoid a multiplicity of such suits, that Hillsdale's rights as aforesaid be determined in this proceeding.

The Tyler Bank & Trust Company intervened, setting up a cause of action against the Products Company and asking judgment on two promissory notes executed and delivered to it by Cement Products Company, one of date July 17, 1942, for $1,100 and one for $4,047.90 executed July 29, 1942, interest and attorney's fees. The bank claimed the entire fund of $4,-063.82 under an alleged assignment by the Cement Products Company of date April 11, 1942.

The Dennehy Construction Company, at the time of making said contract with the Cement Products Company, Inc., for the purchase of concrete cement blocks, required the Cement Products Company to furnish a bond guaranteeing the delivery of the blocks as called for. The General Casualty Company of America, as surety, and Cement Products Company, Inc., as principal did execute such bond payable to the Dennehy Construction Company in the sum of $15,415.20. At the time of making and executing this bond, the General Casualty Company of America, surety thereon, required Cement Products Company, Inc., to make and execute to it as such surety an indemnity contract indemnifying and holding harmless said General Casualty Company from any loss it might sustain on said bond or by reason of being surety thereon. Said indemnity contract assigned to said surety company all the right, title and interest of Cement Products Company, Inc. in and to any and all funds, money, or estimates belonging to it or to be derived from or arising out of the contract between it and the Dennehy Construction Company on the Lubbock Housing Project. This indemnity agreement also protected said surety company from all loss, cost and expenses it might sustain, including legal expenses and attorney's fees.

The case was tried before the court without a jury, and at the conclusion of the trial the court entered a judgment decreeing, among other things, that the assign-

ment by Cement Products Company to the Tyler Bank was not limited with respect to the chose in action to which it pertained, and denied Hillsdale recovery of any part of the funds tendered into court. Dennehy was ordered discharged from all liability by reason of its contract with Cement Products Company and the General Casualty Company was allowed a recovery on its indemnity contract from Cement Products Company of the sum of $400 which the court found (as designated in the judgment) "to be the reasonable amount of its (Casualty Company's) costs and expenses so incurred" or "reasonable fee." Said amount was ordered paid out of the impounded funds, but was adjudged "not a part of the costs" taxed against Hillsdale.

The Tyler Bank was awarded judgment against the Cement Products Company for $6,282.18 and the judgment further provided that after the payment of $400 fee to the attorney for the Casualty Company the remainder of the fund was to be paid to the Tyler Bank. In addition, the judgment allowed an attorney's fee of $250 to Dennehy, Garnishee, and assessed the same against Hillsdale, losing plaintiff in garnishment, as a part of the costs.

Hillsdale appeals, and the record presents findings of fact and conclusions of law in response to special request for such presented by the appellant to the trial court.

Other facts necessary to reflect the specific holdings of the court and judgment thereof will be stated as the opinion proceeds.

Pursuant to a certain resolution, assignment, notice and acceptance thereof, said Bank & Trust Company advanced to Cement Products Company, Inc., money and funds to carry out its contract and involved in this suit. The indebtedness was renewed and evidenced by the two notes in suit, one for $1,100, dated July 17, 1942, and the other for $4,047.92 dated July 29, 1942. No point is made that the Bank did not lend said funds, or that it has been repaid by Cement Products Company.

Several points of error are presented by appellant, but the controlling question is believed to be the one involving the proper construction of the contract of assignment executed by the Products Company to the Bank, whereby it assigned to the Bank the proceeds of the contract between itself (Products Company) and the Dennehy Construction Company, which latter company had on March 11, 1942, contracted with the Lubbock Housing Authority for the erection of certain public improvements in Lubbock, Texas.

On March 12, 1942, Dennehy contracted with the Cement Products Company to furnish it (Dennehy) cement blocks to be used by it in the construction of said improvements, and the Products Company executed for the benefit of Dennehy a performance bond with the General Casualty Company of America, as surety, and the Cement Products Company assigned the benefits of its contract with Dennehy to the said Casualty Company to hold it harmless in the indemnity undertaking by the Casualty Company and Dennehy.

The trial court construed and in effect held the assignment to the bank to be a complete assignment of all funds coming to the Products Company from its contract with Dennehy, and that it was a continuing assignment to secure any indebtedness owing to the Bank by the Products Company, and as such, superior to the rights of Hillsdale, Plaintiff in garnishment, and all other claimants to the fund, except the General Casualty Company of America.

Appellant Hillsdale challenges such holding on the ground that the assignment, if any, was limited and went no further than security to the extent of $4,500 as specified in the resolutions by which the Products Company authorized the assignment for the purpose of securing money for the performance of its contract with Dennehy Construction Company. Appellant insists that, as a matter of law, and because so stipulated, the resolution was a part of the assignment and controlled the extent of the assignment as made by the corporation, and that any other construction would transcend the authority granted by the directors for procuring the loan and would, therefore, not bind the corporation in excess of $4,500. The contention is predicated on rules of law announced in such authorities as Article 1327, R.C.S., 1925; Cameron v. Bank, Tex.Civ.App., 194 S.W. 469, 477; Spencer & Co. v. Thorp College, Tex.Civ.App., 41 S.W.2d 482; Standard Underground Cable Co. v. Southern Independent Tel. Co., Tex.Civ.App., 134 S.W. 429, 433; El Fresnal Irrigated Land Co. v. Bank, Tex.Civ.App., 182 S.W. 701, 703, and like authorities having to do with the extent and legal effect of authority expressly or impliedly granted by a corporation to an agent acting for it, etc.

In his brief appellant says:

"As a matter of contractual stipulation contained in the assignment itself, we contend that the extent of the assignment was controlled by the resolution."

The contention calls for a consideration of the contract of assignment in the light of the resolutions and the acceptance thereof by the Bank and Dennehy Construction Company:

By resolution duly adopted at the meeting of its Board of Directors, the Cement Products Company was authorized to borrow from the Tyler Bank and Leslie Neill, or both, "such sum or sums of money as may be necessary to complete the work on the housing project at Lubbock, Texas, U. S. H. A. Housing Project, Texas, 18-1, up to the sum of $4500.00; that to secure the payment of such sums of money, in addition to assignments and liens now held, that all of the benefits of the contract with Dennehy Construction Company with the furnishing of material on said project and all payments due to said corporation by reason of said contract and project, be assigned to Tyler State Bank and Trust Company for the benefit of Tyler State Bank & Trust Company and Leslie Neill that Dennehy Construction Company be authorized, empowered and directed to mail all checks due under this contract, except one check for $825.00 representing an amount assigned to General Mortgage Investment Company, to Tyler State Bank & Trust Company, * * *."

The resolution stipulated further that the assignment should be security not only for "said sums specified," but for "any and all other indebtedness due or to become due" the bank and Neill, "or either of them," except $825 theretofore assigned the Mortgage Company.

Said resolutions were adopted April 11, 1942, and the assignment which followed immediately contained in substance like provisions, as noted in the resolution, and they were explicitly expressed. It assigned the Bank and Neill "all the proceeds of the funds to be derived by it" from the Dennehy-Products Company contract except said $825 theretofore assigned. The resolution provided "that said assignment shall be as security for said sums * * *, until finally released by an instrument in writing * * *"; and the assignment provided, "this assignment shall be effective until such time as released by an instrument in writing * * *."

The above assignment of April 11, 1942, was accepted by the Dennehy Construction Company on the same date, and in the written acceptance it agreed, "to make all payments hereafter (except the sum of $825 to the General Mortgage Investment Company,) in manner provided until such time as it receives notice in writing from the Tyler State Bank * * * to discontinue such payments * * *."

The witness Chesley testified he was manager of the Cement Products Company, Inc., and that he executed the contract between the Products Company and Dennehy Construction Company; that all the cement blocks called for in the contract had been delivered and accepted, and that he was familiar with the transaction between his company and the Bank and had participated in making arrangement for the assignment to the Bank. Concerning the assignment he testified:

"All the money was assigned. I had reference to all the money to be paid by Dennehy Construction Company. I meant just what I said, all the money was assigned. There wasn't but one contract with Dennehy and all the money was assigned at one time. There was a written assignment and verbal."

In our opinion, it is clear from the resolution of the Board of Directors and the assignment itself, as well as from the conduct of the parties under the same, that the contract between Cement Products Company and the bank was to the effect that the entire proceeds of the Dennehy Construction Company's contract with the Cement Products Company, with exceptions noted, were assigned to the Bank as a continuing security for any money loaned by the Bank to the Cement Products Company. The use of the words "sum or sums" in the resolution, together with the other elements of the assignment and acceptance clearly indicate that the $4,500 was not intended to fix or limit the amount which the Company would borrow from the Bank and treat the assignment as security therefor. The instrument or undertaking was continuing and designed to cover all such sums to be advanced from time to time. The trial court committed no error in so holding or construing the contract in such respects. In fact, the resolution and assignment specifically state that the arrangement covered any and all indebtedness due and to become due the Bank.

We do not consider the rules of construction and interpretation embraced

in the authorities cited by the appellant necessarily controlling in the disposition of this appeal, insofar as it is based upon the point now considered. In principle they deal with situations where a corporation was resisting the effect of an agent's unauthorized act. As we understand this record, the corporation by pleadings and testimony of its general manager admits the validity and binding effect of the assignment. Here the contract, made up of the resolution, the assignment and its acceptance, when considered together, as they must be, demonstrates that all funds due and to become due under the contract between Dennehy and the Products Company were assigned to the Bank until all indebtedness due it by the Products Company was paid and released. In reaching such construction the cardinal rule of determining the intention of the parties as reflected by the instrument or instruments, when considered from the four corners thereof, must not be overlooked or disregarded. As stated in 10 Tex.Jur. p. 282:

"The intention of the parties to a contract is to be gathered from a consideration of the entire instrument, taken by its four corners. In other words, the contract must be read, considered and construed as a whole, and all of its provisions must be taken into consideration and construed together in order to ascertain its meaning and effect.

"Ordinarily it is not proper to consider a single paragraph or clause by itself in order to ascertain its meaning. Each clause or paragraph must be construed with reference to every other paragraph and the effect of one paragraph upon the other determined * * *."

The trial court's interpretation of the contract is confirmed by the acts of the parties and the testimony, especially the testimony of Manager Chesley. If it be conceded that the contract, or an isolated element of it, is doubtful in some respect, which we do not think, nevertheless the construction given the contract of assignment by the parties thereto is of the greatest importance. The rule here employed is stated in 10 Tex.Jur. p. 298, sec. 171, in part as follows:

"The acts of the parties themselves, indicating the construction they mutually placed upon a contract at the time, including acts done in the course of performance, may be considered in interpreting it where it is ambiguous or its meaning is

doubtful. Such a practical construction by the parties is entitled to great weight, and according to many of the cases will control the interpretation of the contract, and be adopted and enforced by the court."

So much for the construction of the contract. The point under consideration is overruled.

By its writ of garnishment served August 14, 1942, the Hillsdale Gravel Company acquired no greater right to the funds in suit than those held by the Cement Products Company, which, long prior thereto, had assigned same to the Bank as security for money borrowed to enable it to carry out its contract with Dennehy. The efficacy of Hillsdale's garnishment against the Bank's assignment is aptly stated in Smith v. Texas & P. Ry. Co., Tex.Civ. App., 39 S.W. 969, 971, as follows:

"His garnishing process merely has the effect to impound such debt as the garnishee may at the time owe the garnisher's debtor. If the garnishee owes such debtor nothing, then nothing is impounded by the writ of garnishment. If the debtor had previously assigned the debt, then the equitable title and beneficial interest passed thereby to another party, and he owed such other party, and not the debtor of the garnishing creditor. * * *"

To the same effect is Pittsburgh Plate Glass Company v. Beck, Tex.Civ.App., 298 S.W. 915, 917, opinion by this court, in which the following language was used and many pertinent authorities cited:

"It has been many times decided that the plaintiff in garnishment acquires no greater right by the service of his writ than that which the defendant could have asserted and enforced in an action against the garnishee, * * *."

The rule of priority rights as among creditors in such cases is clearly stated in Payne v. Finley, Tex.Civ.App., 291 S.W. 944; American Employers' Ins. Co. v. Roddy, Tex.Com.App., 51 S.W.2d 280; Hess & Skinner Engineering Co v. Turney, 110 Tex. 148, 216 S.W. 621; City Nat'l Bank of Beaumont v. American Surety Co. Tex. Com.App., 52 S.W.2d 259.

Point III, pertaining to the sufficiency of some of the Court's findings and conclusions as reflected by the judgment, is overruled on the authority of Foy v. Brenard Mfg. Co., Tex.Civ.App., 284 S.W. 296, syl. 3. As applied to the ultimate issues involved and the special matters and findings requested, there is nothing lack-

ing in the trial court's findings and conclusions which are warranted by the evidence and binding on this court. City State Bank v. Wellington School District, Tex. Civ.App., 173 S.W.2d 738.

Appellant's 4th, 5th and 6th points, in effect, raise the same question and challenge the correctness of the trial court's judgment and findings to the effect that, (1) under the contract with Dennehy, the Cement Products Company was merely a furnisher of material to the Dennehy Construction Company and not a sub-contractor in the meaning of the Mechanics Lien Laws of Texas pertaining to private and public works, (2) that the work was fully performed by the Cement Products Company and the money due and owing and, (3) that the Dennehy Construction Company, upon paying same into the court, was discharged from all liability to the plaintiff Hillsdale and other parties by reason of the contract with Cement Products Company.

The record discloses that Hillsdale in an effort to protect itself was seeking to impound said funds, first, by garnishment proceedings, and second, by complying with certain statutes fixing liens, Articles 5472a, 5472b and 5472c, and Article 5160, V.A.C.S., in event garnishment availed it nothing. Reflecting such issues, apparently injected into the case by Hillsdale, the following language is taken from appellant's brief:

"It is admitted by Hillsdale that, in the course of construction of the public improvements at Lubbock, Texas, for the Lubbock Housing Authority, it undertook to give the Housing Authority such notice as required to fix rights under Article 5472a, that it was furnishing sand and gravel to the Cement Products Company for making up cement blocks to be used by Dennehy in construction of the improvements.

"It is also admitted by Hillsdale that it undertook, by filing claim in the nature of a mechanic's lien, with the County Clerk of Lubbock County, to establish rights under Article 5160, against the surety on the bond given by Dennehy to the Lubbock Housing Authority."

In the situation thus presented, and in view of the rights asserted under the above statutes, the garnishee, Dennehy Construction Company, with the funds in hand owing to the Cement Products Company or the latter's assignee, sought to have all such issues (indicated by the court's judgment) determined before re-

leasing the funds. Other litigants, asserting some character of claim to the funds, either appeared or were interpleaded and they, as well as Dennehy, sought adjudication of such issues to the end that a multiplicity of suits might be avoided. 20 Tex. Jur. p. 866, sec. 125. Some had proceeded under the named statutes, as well as by garnishment.

Such parties, and certainly the Dennehy Construction Company, had a right to have the validity of these various claims to the fund ($4,063.82) tendered into court determined in the pending suit and to have the funds disposed of once and for all by proper judgment, relieving it from possibility of other suits or a double recovery. Until the issue of whether Cement Products was a materialman or subcontractor was determined, the court could not determine the rights of parties in garnishment, for until then it could not be held to whom the amount tendered by Dennehy was due and payable. Pittsburgh Plate Glass Co. v. Beck, Tex.Civ.App., 298 S.W. 915.

Appellant's exceptions to the pleadings were overruled and the issues tried out and determined in the judgment. We have carefully examined the testimony in the light of the contentions now under consideration, and we are of the opinion that the court properly overruled the exceptions and held that the Cement Products Company was a materialman furnishing concrete blocks of standard kind and quality to the Dennehy Construction Company to be used by the latter in the construction of said public building. Likewise, the Hillsdale Company was correctly considered a materialman furnishing sand and gravel to Cement Products Company to be used in manufacture of said cement blocks.

The evidence conclusively establishes the relationship above indicated, and that phase of the judgment is fully sustained by the following authorities: Huddleston v. Nislar, Tex.Civ.App., 72 S.W.2d 959, writ refused; Austin Bridge Co. v. Drake, Tex. Civ.App., 79 S.W.2d 677; Haynes v. Holland, Tenn.Ch., 48 S.W. 400; Arts. 5473 to 5479, Vernon's Ann.Civ.St. These points are overruled. If we are correct in these conclusions, the appellant Hillsdale was then relegated to its rights, if any, as a garnishing creditor.

Appellant's 7th point questions the correctness of the trial court's judgment against Hillsdale for an attorney's fee of

$250 awarded Dennehy Construction Company, the garnishee. As noted, Dennehy tendered the $4,063.82 owing to Cement Products Company into court, and alleged that its contract with the latter company had been completed. It asked that various parties asserting claim thereto either by garnishment or under said Mechanic's Lien Statutes, etc., be brought in and caused to assert their respective claims. Pursuant to such request or prayer, the respective parties appeared, either voluntarily or after service of process. Conflicting claims and possible double recovery were involved, as pointed out.

Hillsdale, plaintiff in garnishment, was unsuccessful, failing to catch and impound any part of the funds tendered in court. In that situation the trial court held garnishee entitled to be discharged with its costs and attorney's fee of $250 and adjudged same against Hillsdale. In our opinion, the evidence and authorities sustain the judgment in that respect. Frazier Jelke & Co. v. Chapman Minerals Corp., Tex.Civ.App., 149 S.W.2d 1101; National Fire Ins. Co. of Hartford, Conn. v. McEvoy Furniture Co., Tex.Civ.App., 192 S. W. 270; Bennett Printing Co. v. Dines Bldg. Co., Tex.Civ.App., 84 S.W.2d 497.

In view of the General Casualty Company's priority in assignment over the Bank and other claimants, and since the evidence is sufficient to support the court's findings of attorney's fee in favor of that company under the terms of the bond or indemnity contract protecting it in such matters, and since there is no appeal from that phase of the judgment on the part of other cross-defendants and no specific point or assignment of error on this item of recovery by the appellant, the judgment in favor of the Casualty Company for $400 "reasonable fee" or "reasonable attorney's fee and expenses" will be sustained. In taxing other costs against Hillsdale the court specifically adjudged, "The reasonable fee of $400 adjudged to General Casualty Company of America is not a part of the costs."

■ If any character of error entered into this adjudication of $400, it did not prejudice or affect Hillsdale for the following reasons: There were two valid assignments prior in point of time to the running of the writ of garnishment by Hillsdale, and the debts secured by these assignments (the one to General Casualty Company amounting to $400, and the other to the Tyler Bank amounting to $5,282.18)

being considerably in excess of the amount of money ($4,063.82) that was owing by Dennehy to Cement Products Company under the contract between them, the Cement Products Company, Inc., had nothing coming to it in any extent applicable to Hillsdale's debt. Further, neither the bank nor Cement Products Company is complaining that the $400 was ordered paid first out of the $4,063.82 tendered into court.

 Also, if there be in any other item or respect an error in the taxation of cost against Hillsdale, the same was not pointed out in any motion for new trial or by motion to retax costs. An inspection of the bill of costs in transcript does not specifically disclose that any particular item of cost is improper or excessive. Hence, no error is shown for correction. Allen v. Woodson, 60 Tex. 651; 11 Tex. Jur. p. 386, secs. 88 and 89.

For the reasons assigned the judgment of the trial court is affirmed.